**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| BROCK LESNAR, | : | |
| | : | |
| Plaintiff, | : | CIVIL FILE NO. |
| | : | 3:05CV221 (CFD) |
| vs. | : | (District of Connecticut) |
| | : | |
| WORLD WRESTLING | : | CIVIL FILE NO. |
| ENTERTAINMENT, INC., | : | 05 MC 71 (DWF/SRN) |
| a Delaware corporation, | : | (District of Minnesota) |
| | : | |
| Defendant. | : | |

**DEFENDANT WORLD WRESTLING
ENTERTAINMENT, INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION TO QUASH OR
MODIFY SUBPOENA ISSUED TO ATTORNEY DAVID BRADLEY OLSEN**

Defendant World Wrestling Entertainment, Inc. ("WWE") respectfully submits this memorandum of law in opposition to Plaintiff's Motion to Quash or Modify Subpoena Issued to Attorney David Bradley Olsen (the "Motion").

**I. INTRODUCTION**

The Motion is nothing more than a last minute, dilatory and meritless attempt to avoid discovery to which Plaintiff Brock Lesnar's ("Lesnar") trial counsel previously agreed more than one month ago. Lesnar was aware since at least November 18, 2005 that WWE intended to depose his agent/lawyer David Bradley Olsen ("Olsen") in the underlying litigation pending in the United States District Court for the District of Connecticut (the "Connecticut Court"). In fact, Lesnar's counsel not only never raised any possible objections to the deposition, but he also specifically confirmed, after consulting with Olsen directly, that Olsen would appear for his deposition on December

20, 2005 in connection with WWE's agreement to modify the original date contained in the subpoena to accommodate Olsen's and Lesnar's trial counsel's schedules. Nonetheless, just two business days before counsel for WWE was scheduled to travel to Minnesota for Olsen's deposition, Lesnar filed an eleventh-hour motion to quash the subpoena.

Reflective of the tactical gamesmanship pursuant to which it was filed, the purported grounds for the Motion are without merit.  As an initial matter, this Court should exercise its discretion to transfer the Motion to the Connecticut Court where the underlying litigation has been pending for almost a year.  The Connecticut Court is more familiar with the factual and legal issues involved in the underlying litigation.  More importantly, however, the issues raised by the Motion already have been the subject of discovery rulings made by the Connecticut Court overseeing discovery in the underlying litigation.  Specifically, the Connecticut Court has ruled that:  **(i) Olsen is a fact witness; and (ii) information concerning New Japan Pro Wrestling ("New Japan") is within the scope of permissible discovery at this time.**  While these rulings squarely contradict the arguments of the Motion on their face, any interpretation of the Connecticut Court's prior discovery rulings in these circumstances plainly should be done by the Connecticut Court that issued these rulings in the first instance.  Therefore, in the interests of efficiency, uniformity and judicial economy, this Court should exercise its discretion and transfer the Motion to the Connecticut Court for resolution.

In the event this Court does not transfer the Motion, the Motion should be denied because:

    (i)    the deposition is permissible discovery authorized by the Connecticut Court;

    (ii)    Lesnar's broad, generic, blanket privilege claims are without merit;

    (iii)    the subpoena was issued solely to obtain relevant information from a fact witness; and

    (iv)    Lesnar's trial counsel in the underlying litigation in Connecticut agreed to produce Olsen for his deposition and did not previously raise any objections to the deposition.

Moreover, because the Motion is without merit, serving only to delay the deposition and increase WWE's costs, Lesnar's counsel should be ordered to pay the attorneys' fees WWE has been forced to incur to respond to the Motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

**A.**    **The Underlying Litigation**

On February 4, 2005, Lesnar commenced an action against WWE in the Connecticut Court seeking a declaration that certain provisions of a Settlement Agreement and General Release of All Claims (the "Settlement Agreement") he entered into with WWE are void and unenforceable (the "Underlying Litigation").  Affidavit of Jerry S. McDevitt in Opposition to Plaintiff's Motion to Quash or Modify Subpoena Issued to Attorney David Bradley Olsen ("McDevitt Aff.") ¶ 2.[1]

---

[1] The Affidavit of Jerry S. McDevitt in Opposition to Plaintiff's Motion to Quash or Modify Subpoena Issued to Attorney David Bradley Olsen is being filed concurrently herewith.

On May 18, 2005, Lesnar moved for summary judgment, and on June 16, 2005, the Connecticut Court ordered that WWE was permitted to conduct certain discovery on issues raised in the motion for summary judgment, including serving document requests and taking three depositions.  McDevitt Aff. ¶ 3.

To that end, WWE served its First Request for Production of Documents to Plaintiff (the "Request for Production").  Because Lesnar refused to produce certain documents in response to WWE's Request for Production, including any documents regarding Lesnar's contacts with New Japan, WWE was forced to file a motion to compel.  McDevitt Aff. ¶ 4.  **At the September 15, 2005 discovery hearing on WWE's motion to compel, the Connecticut Court ordered Lesnar to produce, among other things, "any documents concerning New Japan."**  McDevitt Aff. ¶ 5.  Therefore, the Connecticut Court overseeing discovery in the Underlying Litigation already has ruled that information concerning New Japan is within the scope of permissible discovery at this stage of the Underlying Litigation.  McDevitt Aff. ¶ 6.

**B.      Deposition Of Brock Lesnar**

On November 21, 2005, Lesnar was deposed in the Underlying Litigation.  **Notably, prior to the commencement of Lesnar's deposition, the Connecticut Court ruled that Olsen was not permitted to attend the deposition because he is a fact witness.**  McDevitt Aff. ¶ 7.

At the deposition, Lesnar was asked questions about a number of topics, including the circumstances leading up to the Settlement Agreement, his understanding of the terms of the Settlement Agreement, and his contacts and involvement with New Japan.

4

McDevitt Aff. ¶ 8. Not one objection was interposed to any of the questions dealing with these subjects on the grounds that they were either beyond the scope of permissible discovery or protected by the attorney-client privilege, the work product doctrine, any Minnesota statute[2] or any other alleged privilege. McDevitt Aff. ¶ 9. Instead, Lesnar answered all of these questions without one scope or privilege objection being asserted. McDevitt Aff. ¶ 10. In fact, in certain instances Lesnar even volunteered information regarding conversations he had with Olsen regarding these and other topics. McDevitt Aff. ¶ 11. For example, Lesnar testified that: (i) before signing the Settlement Agreement, he forwarded a draft to Olsen, who advised Lesnar that he did not think it looked good from Lesnar's perspective; (ii) after failing at football, he called Olsen to see what he could do under the Settlement Agreement, and Olsen advised Lesnar that he could not do anything except go back to work for WWE; and (iii) after signing a deal with New Japan, Olsen advised Lesnar not to say anything to WWE about the New Japan deal. Id.[3]

Additionally, several times during the deposition, Lesnar told counsel for WWE that he did not know the answer to a particular question and stated that counsel for WWE would have to ask Olsen. McDevitt Aff. ¶ 12.

---

[2] In Minnesota, the common law attorney-client privilege is codified in Minn. Stat. § 595.02. See Minnesota v. Walen, 563 N.W.2d 742, 752 (Minn. 1997).

[3] As discussed below, such testimony arguably has resulted in a waiver of the attorney-client privilege.

## C.   Deposition Of David Olsen

Because Olsen is a fact witness, on November 17, 2005, Olsen was served with a subpoena issued by this Court compelling him to appear in Minnesota for a deposition in the Underlying Litigation on November 30, 2005, and on November 18, 2005, Lesnar was served with a notice of deposition for Olsen's deposition. McDevitt Aff. ¶ 13.

Subsequently, Scott Centrella, Lesnar's trial counsel in the Underlying Litigation, requested that Olsen's deposition (as well as the deposition of another witness who also had been subpoenaed previously, Brad Rheingans) be rescheduled to accommodate both his and Olsen's schedule, and counsel for WWE agreed. McDevitt Aff. ¶ 14. Then, in an e-mail dated December 1, 2005, Mr. Centrella, after specific consultation with Olsen, and without making any reference to any possible objection to Olsen's deposition, confirmed the depositions of Olsen and Rheingans for December 20, 2005. McDevitt Aff. ¶ 15. Therefore, as of December 1, 2005, Lesnar's trial counsel agreed to produce Olsen for his deposition and never raised any possible objections to the deposition. McDevitt Aff. ¶ 16.

Then, only two business days before counsel for WWE was due to travel to Minnesota for the depositions, and despite (i) having notice of WWE's intent to depose Olsen since at least November 18, 2005,[4] (ii) agreeing to produce Olsen for his

---

[4] In fact, Lesnar was aware that WWE intended to depose Olsen months before he was served with the notice of deposition because WWE listed Olsen as a witness in its Initial Disclosure Statement filed on June 30, 2005. McDevitt Aff. ¶ 18.

deposition, and (iii) not previously raising any objection whatsoever to the deposition, Lesnar filed the Motion. McDevitt Aff. ¶ 17.

Much of what WWE intends to question Olsen about are facts regarding his dealings with New Japan as well as facts regarding statements he made to WWE regarding, among other things, New Japan. McDevitt Aff. ¶ 19.

As discussed below, this Court should transfer the Motion to the Connecticut Court because: (i) the Connecticut Court is more familiar with the factual and legal issues involved in the Underlying Litigation; and (ii) the Connecticut Court is overseeing discovery in the Underlying Litigation and in fact already has made two discovery rulings that are directly relevant to the resolution of the Motion. In the event this Court does not transfer the Motion, however, the Motion should be denied, the deposition should proceed, and Lesnar's counsel should be ordered to pay the attorneys' fees WWE has been forced to incur to respond to the Motion.

### III.  ARGUMENT

**A.    This Court Should Transfer The Motion To The Connecticut Court Overseeing Discovery In The Underlying Litigation Which Already Has Made Two Discovery Rulings That Are Directly Relevant To The Resolution Of This Motion**

Although this Court which issued the subpoena initially has exclusive jurisdiction to rule on motions challenging the subpoena, it may in its discretion transfer such motions to the Connecticut Court in which the Underlying Litigation is pending. See, e.g., In re Digital Equip. Corp., 949 F.2d 228, 231 (8th Cir. 1991) (stating that while the court which issued the subpoena "initially has exclusive jurisdiction to rule on the

objections [to the subpoena], it may in its discretion remit the matter to the court in which the action is pending); Petersen v. Douglas County Bank & Trust Co., 940 F.2d 1389 (10th Cir. 1991) (holding that sua sponte transfer of motion to quash to forum where underlying litigation pending was not improper); Pactel Personal Communications v. SMB Realty Corp., 133 F.R.D. 137 (E.D. Mo. 1990) (stating that district court may transfer motion to quash subpoena served on nonparties to forum where underlying litigation pending pursuant to power granted in Rule 26(c)); 9A Charles A. Wright Arthur R. Miller, Federal Practice and Procedure §2464 at 79 (1995) (stating that "it is within the discretion of the court that issued the subpoena to transfer motions involving the subpoena to the district in which the action is pending.").[5] Such transfers are appropriate to promote efficiency, uniformity and judicial economy.

For example, in In Re Subpoena Duces Tecum ("Subpoena"), 918 F. Supp. 272 (E.D. Wisc. 1996), the district court which issued the subpoenas exercised its discretionary authority and transferred the motions to quash the subpoenas to the forum where the underlying litigation was pending, stating that the transfer was appropriate and

---

[5] Even the case cited by Lesnar in support of his claim that the district court which issued the subpoena should determine a motion to quash or modify the subpoena supports WWE's request to transfer the Motion because, although the challenged subpoena in that case was issued by the district court in Colorado, the district court in North Carolina, the forum where the underlying action was pending, ruled on the challenge to the subpoena. See Static Control Components, Inc. v. Darkprint Imaging, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (stating that the rule that the district court which issued the subpoena should determine a motion to quash the subpoena "does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery.").

8

"in the interest of uniformity and judicial economy." Subpoena, 918 F. Supp. at 273. In support of its decision to transfer, the court stated:

> Clearly, the Court in the Southern District of Ohio [where the underlying litigation is pending] is more familiar with the factual and legal issues underlying this cause of action and is in a better position to rule on the relevancy, undue burden and confidentiality of the . . . requests within the totality of the circumstances surrounding this litigation.

Subpoena, 918 F. Supp. at 274. As a result, the court concluded that it "is more efficient to transfer this entire subpoena enforcement matter outright to the Southern District of Ohio" where the underlying litigation was pending. Subpoena, 918 F. Supp. at 274.

Similarly, it is more efficient to transfer the Motion to the Connecticut Court where the Underlying Litigation has been pending for almost a year. Initially, the Connecticut Court is more familiar with the factual and legal issues involved in the Underlying Litigation. Moreover, the Connecticut Court is also overseeing discovery in the Underlying Litigation, and, in fact, already has made two rulings that are directly relevant to the resolution of the Motion: (i) Olsen is a fact witness, and (ii) information concerning New Japan is within the scope of permissible discovery at this time. These prior discovery rulings by the Connecticut Court in the Underlying Litigation mandate denial of the Motion because much of what WWE intends to question Olsen about are facts regarding his dealings with New Japan as well as facts regarding statements he made to WWE regarding, among other things, New Japan, which the Connecticut Court already has ruled is within the scope of permissible discovery at this time. McDevitt Aff. ¶ 19. While these rulings squarely contradict the arguments of the Motion on their face, any interpretation of these prior discovery rulings plainly should be done by the

Connecticut Court that issued these rulings in the first instance. Therefore, in the interests of efficiency, uniformity and judicial economy, this Court should exercise its discretion and transfer the Motion to the Connecticut Court for resolution in accordance with its prior discovery rulings.

**B.    If The Motion Is Not Transferred, The Motion Should Be Denied**

In the event this Court does not transfer the Motion, the Motion should be denied for the reasons set forth below.

**1.    The Deposition Is Permissible Discovery Authorized By The Connecticut Court**

Without knowing what WWE intends to ask Olsen at his deposition, Lesnar contends that the deposition is outside the scope of permissible discovery at this stage of the Underlying Litigation because it allegedly does not relate to his motion for summary judgment. See Plaintiff's Memorandum in Support of Motion to Quash or Modify Subpoena Issued to Attorney David Bradley Olsen ("Pl. Mem.") at 8. This argument is disingenuous because it completely ignores the prior discovery rulings made by the Connecticut Court as well as Lesnar's counsel's conduct at his recent deposition.

Although he conveniently fails to mention it to this Court, Lesnar is aware that the Connecticut Court, in ruling on the motion to compel that WWE was forced to file when Lesnar made this same argument in the Underlying Litigation when he refused to properly respond to WWE's document requests, ordered Lesnar to produce "any

10

documents concerning New Japan."[6] McDevitt Aff. ¶¶ 4-5. Therefore, the Connecticut Court overseeing discovery in the Underlying Litigation already has ruled that information related to New Japan is in fact within the scope of permissible discovery at this time. McDevitt Aff. ¶ 6. Despite this ruling, as well as the fact that Lesnar's counsel did not object to any questions regarding New Japan as being outside the scope of permissible discovery at Lesnar's deposition (McDevitt Aff. ¶¶ 8-10), Lesnar now claims, without knowing what WWE intends to ask Olsen, that Olsen's deposition is somehow outside the scope of permissible discovery. Because much of what WWE intends to question Olsen about are facts regarding his dealings with New Japan as well as facts regarding statements he made to WWE regarding, among other things, New Japan, his deposition is clearly within the scope of permissible discovery at this stage of the Underlying Litigation. McDevitt Aff. ¶ 19.

### 2. Lesnar's Blanket Assertion Of Privilege Is Insufficient To Quash The Subpoena

In broad, sweeping terms, and again without knowing what WWE intends to ask Olsen at his deposition, Lesnar contends that the attorney-client and work product privileges justify quashing the subpoena and barring Olsen's deposition completely. See Pl. Mem. at 4-7. Because such a general blanket assertion of privilege is insufficient to quash a subpoena, the Motion should be denied.

---

[6] Lesnar also conveniently fails to mention that the Connecticut Court has ruled previously that Olsen is a fact witness. McDevitt Aff. ¶ 7.

11

As a general rule, blanket assertions of privilege are disfavored and insufficient. See In Re Fred H. Bame, 251 B.R. 367, 372 (Bankr. D. Minn. 2000) ("blanket assertions of the attorney-client privilege are disfavored"); In Re Milk Products Antitrust Litigation, 84 F. Supp. 2d 1016, 1028 (D. Minn. 1997) ("a blanket statement that a privilege applies simply will not suffice"); King-Fisher Co. v. The United States, 58 Fed. Cl. 570, 571 (Fed. Cl. 2003) ("a blanket assertion of attorney-client privilege does not automatically bar the deposition of an opposing party's counsel, who participated in the events that underlie the action"). Rather, privilege must be asserted as to each question or document to permit the court to assess whether the privilege actually applies and to provide a ruling with sufficient specificity. See Foster v. Hill, 188 F.3d 1259, 1264 (10th Cir. 1999) ("the party must bear the burden as to specific questions or documents, not by making a blanket claim"); Clarke v. American Commerce National Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("the privilege must ordinarily be raised as to each record sought to allow the court to rule with specificity"); Alcon Laboratories, Inc. v. Pharmacia Corp., 225 F. Supp.2d 340, 344 (S.D.N.Y. 2002) (court reserved decision "on the disputed assertions of privilege until the privilege has been asserted at a deposition or on a privilege log, and the issue is then ripe for consideration.").

Because Lesnar's blanket assertion of privilege is insufficient, the Motion should be denied, and Olsen should be required to attend the deposition, testify, and assert any alleged applicable privileges, if any, on a question-by-question basis. See Cooper v. Welch Foods, Inc., 105 F.R.D. 4, 6 (W.D.N.Y. 1984) ("proper matters may be inquired into at the deposition and any proper privileges may be asserted thereat"); Qad.inc v.

ALN Associates, Inc., 132 F.R.D. 492, 495 (N.D. Il. 1990) ("this [c]ourt subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of permitting the deposition to go forward, with any individualized objections to be dealt with during its regular course."); Cook Inc. v. C R Bard Inc., No. IP 00-1791-C(B/S), 2003 WL 23009047, at *1 (S.D. In. Sept. 18, 2003)[7] ("the desirability of placing concrete objections before the [c]ourt for resolution, rather than asking the [c]ourt to resolve abstract privilege and relevancy arguments, outweighs the need to protect attorneys . . ."); Roper v. Exxon Corp., No. CIV. A. 97-1971, 1998 WL 341838, at *2 (E.D. La. June 25, 1998) (stating that although depositions of lawyers pose special problems, "because the privilege is limited and does not apply to all information a lawyer possesses, such problems are not insurmountable and can be addressed by vigilance during the depositions and procedures provided by Fed. R. Civ. P. 30(d).  They do not require a blanket order that the deposition notices be quashed in their entirety.").  In the event questions concerning privileged matters arise at the deposition, objections based on privilege can be asserted and addressed at that time.

Additionally, a serious question exists as to whether Lesnar has waived the attorney-client privilege by volunteering information at his deposition about conversations he had with Olsen.  For example, Lesnar testified that: (i) before signing the Settlement Agreement, he forwarded a draft to Olsen, who advised Lesnar that he did not think it looked good from Lesnar's perspective; (ii) after failing at football, he called

---

[7] Copies of all cited unpublished cases are attached as Exhibit I to the McDevitt Affidavit.

13

Olsen to see what he could do under the Settlement Agreement, and Olsen advised Lesnar that he could not do anything except go back to work for WWE; and (iii) after signing a deal with New Japan, Olsen advised Lesnar not to say anything to WWE about the New Japan deal. McDevitt Aff. ¶ 11. Therefore, Lesnar arguably has waived the attorney-client privilege, thus negating any asserted claim of privilege. See, e.g., PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership, 187 F.3d 988, 992 (8th Cir. 1999) ("The attorney/client privilege is waived by the voluntary disclosure of privileged communications, and courts typically apply such a waiver to all communications on the same subject matter"); Swanson v. Domning, 86 N.W.2d 716, 722 (Minn. 1957) ("Where the client voluntarily testifies to statements alleged to have been made to an attorney or statements made by the attorney to the client, it must be held that the client has waived the privilege as to the things testified to by the client and cannot prevent the adverse party from calling the attorney as a witness to rebut or complete the conversation on that matter."); United States v. United Technologies Corp., 979 F. Supp. 108, 111 (D. Conn. 1997) ("Once a privileged communication has been disclosed purposely to a third party, the attorney-client privileged is waived"); Hutchinson v. Farm Family Casualty Insurance Company, 867 A.2d 1, 5 (Conn. 2005) (stating that implied waiver of the attorney-client privileged is invoked when a party voluntarily testifies regarding portions of the attorney-client communication).

      Finally, regardless of waiver, not all of Olsen's testimony would be subject to any claim of privilege because as the Connecticut Court has ruled previously, Olsen is a fact witness. McDevitt Aff. ¶ 7. Moreover, much of what WWE intends to question Olsen

about are facts regarding his dealings with New Japan as well as facts regarding statements he made to WWE regarding, among other things, New Japan.  McDevitt Aff. ¶ 19.  Such factual information is not protected by any privilege and is therefore discoverable.

### 3. The Subpoena Was Issued Solely To Obtain Relevant Information From A Fact Witness

Lesnar's contention that the subpoena was issued to attempt to disqualify Olsen as trial counsel (see Pl. Mem. at 7) is pure fiction.  As stated above, the Connecticut Court overseeing discovery in the Underlying Litigation has already ruled that Olsen is a fact witness.  McDevitt Aff. ¶ 7.  The Connecticut Court has also ruled that information concerning New Japan is within the scope of permissible discovery in the Underlying Litigation.  McDevitt Aff. ¶¶ 5-6.  Therefore, because much of what WWE intends to question Olsen about are facts regarding his dealings with New Japan as well as facts regarding statements he made to WWE regarding, among other things, New Japan, which the Connecticut Court already has ruled is within the scope of permissible discovery at this time, the subpoena was proper and should be enforced.  McDevitt Aff. ¶ 19.

Second, several times during his deposition, Lesnar told counsel for WWE that he did not know the answer to a particular question and stated that counsel for WWE would have to ask Olsen.  McDevitt Aff. ¶ 12.  Lesnar should not be permitted to not answer questions at his deposition by specifically deferring to Olsen and then subsequently prevent Olsen from testifying, which is exactly what he is attempting to do in his Motion.

Third, the simple fact of the matter is that Olsen is not trial counsel for Lesnar in the Underlying Litigation. McDevitt Aff. ¶ 20. Despite the Underlying Litigation being filed almost one year ago, and despite numerous filings by Lesnar since that time, Olsen has not moved to be admitted as counsel in that case. Id. In fact, Lesnar never mentioned previously that Olsen would be trial counsel and only does so now when Olsen attempts to avoid testifying. Id. Moreover, Olsen's failure to move for admission in the Underlying Litigation is not surprising in light of the fact that it would most likely be denied because the Connecticut Court has already determined that he is a fact witness. McDevitt Aff. ¶ 7.

    **4.** **Lesnar's Trial Counsel In The Underlying Litigation Agreed To Produce Olsen For His Deposition And Did Not Raise Any Objections To The Deposition**

Lesnar was aware since at least November 18, 2005 that WWE intended to depose his agent/lawyer Olsen in the Underlying Litigation when he was served with the notice of deposition for Olsen's deposition. McDevitt Aff. ¶ 13. Subsequently, Mr. Centrella, Lesnar's trial counsel in the Underlying Litigation, requested that Olsen's deposition be rescheduled to accommodate both his and Olsen's schedule, and counsel for WWE agreed. McDevitt Aff. ¶ 14. Then, in an e-mail dated December 1, 2005, Mr. Centrella, after specific consultation with Olsen, and without making any reference to any possible objection to Olsen's deposition, confirmed the deposition of Olsen for December 20, 2005. McDevitt Aff. ¶ 15. Therefore, as of December 1, 2005, Lesnar's trial counsel agreed to produce Olsen for his deposition and never raised any possible objections to the deposition. McDevitt Aff. ¶ 16. Nonetheless, just two business days before counsel for

WWE was scheduled to travel to Minnesota for Olsen's deposition, Lesnar filed the eleventh-hour Motion. McDevitt Aff. ¶ 17.

The fact that Lesnar's trial counsel never raised any possible objections to Olsen's deposition for more than a month after being notified of the deposition, as well as the fact that he specifically agreed to produce Olsen for his deposition, indicates that he knew the deposition was proper in light of the prior discovery rulings by the Connecticut Court. Nonetheless, he filed this meritless Motion in a last minute attempt to avoid discovery which he knew was proper and to which he previously agreed. Such gamesmanship should not be tolerated, and the Motion should be denied.

**C.     Lesnar's Counsel Should Be Ordered To Pay The Attorneys' Fees WWE Has Been Forced To Incur To Respond To The Frivolous Motion**

Lesnar's last minute Motion, filed after Lesnar's trial counsel previously confirmed, without raising any possible objections, that Olsen would appear for his deposition on December 20, 2005, unreasonably and vexatiously multiplied the proceedings in the Underlying Litigation. As a result, pursuant to 28 U.S.C. § 1927, this Court should order Lesnar's counsel to pay the attorneys' fees WWE has been forced to incur to respond to the frivolous Motion.

28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The purpose of § 1927 is to ensure that "those who create unnecessary costs also bear them." Schaffhausen v. Bank of America, No. Civ. 03-

17

3492JRTFLN, 2004 WL 234400, at *2 (D. Minn. Feb. 2, 2004) (citations omitted). Further, § 1927 is applicable when an attorney conducts litigation in a manner that escalates costs, intentionally delays proceedings, or has no reasonable basis for the proffered position. See, e.g. Lupo v. R. Rowland and Co., 857 F.2d 482, 486 (8th Cir. 1988); Jones v. United Parcel Service, Inc., No. 03-0284-CVW-GAF, slip op., 2005 WL 1688071, at *1 (W.D. Mo. July 19, 2005); Schaffhausen, 2004 WL 234400, at *2.

Lesnar's Motion unnecessarily multiplied proceedings in the Underlying Litigation and was unreasonable and vexatious. Although he conveniently fails to mention it to this Court, Lesnar is aware that the Connecticut Court ruled previously that: (i) Olsen is a fact witness; and (ii) information regarding New Japan is within the scope of permissible discovery at this time. McDevitt Aff. ¶¶ 5-7. Moreover, the law clearly establishes that Lesnar's blanket assertion of privilege is insufficient, and any alleged privilege objection must be raised on a question-by-question basis. Lastly, Lesnar was aware of WWE's intent to depose Olsen since at least November 18, 2005 when he was served with notice of Olsen's deposition, and Lesnar's trial counsel, after consultation with Olsen, and without making any reference to any possible objection to Olsen's deposition, confirmed Olsen's deposition for December 20, 2005. Despite these facts, Lesnar waited until two business days before counsel for WWE was due to travel to Minnesota for the deposition before filing the Motion.

The above facts establish that because there was no reasonable basis to oppose the subpoena, the Motion was filed to unreasonably and vexatiously multiply proceedings in the Underlying Litigation, escalate costs, and delay the Underlying Litigation. As a

result, this Court should order Lesnar's counsel to pay the attorneys' fees WWE has been forced to incur to respond to the frivolous Motion.

## IV. **CONCLUSION**

For all the foregoing reasons, this Court should deny Lesnar's Motion to Quash and order Lesnar's counsel to pay the attorneys' fees WWE has been forced to incur to respond to the frivolous Motion.

                                              Respectfully submitted,

                                              By: s/ Mark Ginder
                                              Mark Ginder #0136396
                                              Dorsey & Whitney LLP
                                              220 South Sixth Street
                                              Minneapolis, MN 55402

                                              OF COUNSEL:
                                              Jerry S. McDevitt[8]
                                              KIRKPATRICK & LOCKHART
                                              NICHOLSON GRAHAM LLP
                                              Henry W. Oliver Building
                                              535 Smithfield Street
                                              Pittsburgh, PA 15222
                                              (412) 355-6500

                                              Attorneys for Defendant,
                                              World Wrestling Entertainment, Inc.

Dated: December 30, 2005

---

[8] Pending motion for admission pro hac vice.