# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| BROCK LESNAR, | : | |
| | : | |
| Plaintiff, | : | CIVIL FILE NO. |
| | : | 3:05CV221 (CFD) |
| vs. | : | (District of Connecticut) |
| | : | |
| WORLD WRESTLING | : | CIVIL FILE NO. |
| ENTERTAINMENT, INC., | : | 05 MC 71 (DWF/SRN) |
| a Delaware corporation, | : | (District of Minnesota) |
| | : | |
| Defendant. | : | |

**AFFIDAVIT OF JERRY S. MCDEVITT IN OPPOSITION
TO PLAINTIFF'S MOTION TO QUASH OR MODIFY
SUBPOENA ISSUED TO ATTORNEY DAVID BRADLEY OLSEN**

COMMONWEALTH OF PENNSYLVANIA  )
                                                        ) ss:
COUNTY OF ALLEGHENY                      )

Jerry S. McDevitt, being duly sworn, deposes and says:

1. I am a partner with the law firm of Kirkpatrick & Lockhart Nicholson Graham LLP. I am lead counsel in this case on behalf of defendant, World Wrestling Entertainment, Inc. ("WWE"). I make this affidavit on the basis of personal knowledge unless otherwise indicated.

2. On February 4, 2005, Plaintiff Brock Lesnar ("Lesnar") commenced an action against WWE in the United States District Court for the District of Connecticut (the "Connecticut Court") seeking a declaration that certain provisions of a Settlement Agreement and General Release of All Claims (the "Settlement Agreement") he entered into with WWE are void and unenforceable (the "Underlying Litigation").

3. On May 18, 2005, Lesnar moved for summary judgment, and on June 16, 2005, the Connecticut Court ordered that WWE was permitted to conduct certain discovery on issues raised in the motion for summary judgment, including serving document requests and taking three depositions. See June 16, 2005 Order, a true and correct copy of which is attached hereto as Exhibit A.

4. To that end, WWE served its First Request for Production of Documents to Plaintiff (the "Request for Production").  Because Lesnar refused to produce certain documents in response to WWE's Request for Production, including any documents regarding Lesnar's contacts with New Japan Pro Wrestling ("New Japan"), WWE was forced to file a motion to compel. See Plaintiff's Response to Defendant's First Request for Production of Documents, a true and correct copy of which is attached hereto as Exhibit B, at 5-8, 14-16.

5. At the September 15, 2005 discovery hearing on WWE's motion to compel, the Connecticut Court ordered Lesnar to produce, among other things, "any documents concerning New Japan." See Transcript of September 15, 2005 Hearing, a true and correct copy of which is attached hereto as Exhibit C, at 27:22-28:10.

6. Therefore, the Connecticut Court overseeing discovery in the Underlying Litigation already has ruled that information concerning New Japan is within the scope of permissible discovery at this stage of the Underlying Litigation.

7. On November 21, 2005, Lesnar was deposed in the Underlying Litigation. Notably, prior to the commencement of Lesnar's deposition, the Connecticut Court ruled

that David Bradley Olsen ("Olsen") was not permitted to attend the deposition because he is a fact witness.

8. At the deposition, Lesnar was asked questions about a number of topics, including the circumstances leading up to the Settlement Agreement, his understanding of the terms of the Settlement Agreement, and his contacts and involvement with New Japan.

9. Not one objection was interposed to any of the questions dealing with these subjects on the grounds that they were either beyond the scope of permissible discovery or protected by the attorney client privilege, the work product doctrine, any Minnesota statute or any other alleged privilege.

10. Instead, Lesnar answered all of these questions without one scope or privilege objection being asserted.

11. In fact, in certain instances Lesnar even volunteered information regarding conversations he had with Olsen regarding these and other topics. For example, Lesnar testified that: (i) before signing the Settlement Agreement, he forwarded a draft to Olsen, who advised Lesnar that he did not think it looked good from Lesnar's perspective; (ii) after failing at football, he called Olsen to see what he could do under the Settlement Agreement, and Olsen advised Lesnar that he could not do anything except go back to work for WWE; and (iii) after signing a deal with New Japan, Olsen advised Lesnar not to say anything to WWE about the New Japan deal. <u>See</u> November 21, 2005 Deposition of Brock Lesnar ("Lesnar Dep."), the relevant pages of which are attached hereto as Exhibit D, at 27:10-16; 128:13-129:3; 257:6-257:12.

12.     Additionally, several times during his deposition, Lesnar stated that he did not know the answer to a particular question and stated that I would have to ask Olsen. See, e.g., Lesnar Dep., Exhibit D, at 141:11-141:13 ("I don't know, you'll have to ask him.").

13.     Because Olsen is a fact witness, on November 17, 2005, Olsen was served with a subpoena issued by this Court compelling him to appear in Minnesota for a deposition in the Underlying Litigation on November 30, 2005, and on November 18, 2005, Lesnar was served with a notice of deposition for Olsen's deposition. See Subpoena and Notice of Deposition, true and correct copies of which are attached hereto as Exhibits E and F, respectively.

14.     Subsequently, Scott Centrella, Lesnar's trial counsel in the Underlying Litigation, requested that Olsen's deposition (as well as the deposition of another witness who also had been subpoenaed previously, Brad Rheingans) be rescheduled to accommodate both his and Olsen's schedule, and counsel for WWE agreed.

15.     Then, in an e-mail dated December 1, 2005, Mr. Centrella, after specific consultation with Olsen, and without making any reference to any possible objection to Olsen's deposition, confirmed the depositions of Olsen and Rheingans for December 20, 2005. See December 1, 2005 e-mail, a true and correct copy of which is attached hereto as Exhibit G.

16.     Therefore, as of December 1, 2005, Lesnar's trial counsel agreed to produce Olsen for his deposition and never raised any possible objections to the deposition.

17. Then, only two business days before counsel for WWE was due to travel to Minnesota for the depositions, and despite (i) having notice of WWE's intent to depose Olsen since at least November 18, 2005, (ii) agreeing to produce Olsen for his deposition, and (iii) not previously raising any objection whatsoever to the deposition, Lesnar filed the motion to quash.

18. Lesnar was aware that WWE intended to depose Olsen months before he was served with the notice of deposition because WWE listed Olsen as a witness in its Initial Disclosure Statement filed on June 30, 2005. See Initial Disclosure Statement of Defendant World Wrestling Entertainment, Inc., a true and correct copy of which is attached hereto as Exhibit H, at 3.

19. Much of what WWE intends to question Olsen about are facts regarding his dealings with New Japan as well as facts regarding statements he made to WWE regarding, among other things, New Japan.

20. Olsen is not trial counsel for Lesnar in the Underlying Litigation. Despite the Underlying Litigation being filed almost one year ago, and despite numerous filings by Lesnar since that time, Olsen has not moved to be admitted as counsel in that case. In fact, Lesnar never mentioned previously that Olsen would be trial counsel. Further, Olsen has been sanctioned by another federal court in prior litigation against WWE. See Blood v. Titan Sports, Inc., No. 3:94CV307-P (W.D.N.C.), Order dated November 25, 1996, a true and correct copy of which is attached hereto as Exhibit I.

    FURTHER AFFIANT SAYETH NOT.

                                             ___s/ Jerry S. McDevitt_____
                                             Jerry S. McDevitt

Subscribed and sworn to before me
this _29th___ day of December, 2005


___s/ Linda J. Balog_____
Notary Public